

# U.S. MERIT SYSTEMS PROTECTION BOARD

### Office of the Clerk of the Board
**1615 M Street, N.W.**
**Washington, D.C.  20419-0002**

Phone: 202-653-7200; Fax: 202-653-7130; E-Mail: mspb@mspb.gov

2023-2409

# ATTESTATION

I HEREBY ATTEST that the attached index represents a list of the documents comprising the administrative record of the Merit Systems Protection Board in the appeal of Amanda Mojdeh Raiszadeh *v.* Department of Homeland Security, MSPB Docket No. DC-1221-12-0452-B-1, and that the administrative record is under my official custody and control on this date

on file in this Board

| September 25, 2023 | /s/ for |
|---|---|
| Date | Jennifer Everling |
| | Acting Clerk of the Board |

## CERTIFICATE OF SERVICE

I hereby certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

Petitioner

Electronic Mail          Amanda Mojdeh Raiszadeh
(via mspb@mspb.gov)      amanda20120@yahoo.com

Respondent

Electronic Mail          Martin F. Hockey, Jr., Acting Director
(via mspb@mspb.gov)      Commercial Litigation Branch
                         Civil Division Classification Unit
                         U.S. Department of Justice
                         c/o Thee Matthews
                         thee.matthews@usdoj.gov

| September 25, 2023 | /s/ |
|---|---|
| (Date) | Dinh Chung |
| | Case Management Specialist |

INDEX                                              Page 1 of 2

AMANDA MOJDEH RAISZADEH

v.

DEPARTMENT OF HOMELAND SECURITY

MSPB Docket No.   DC-0752-12-0648-I-1


IA-REFORM ACT MERIT

| TAB | VOLUME | DESCRIPTION OF DOCUMENT | DATE OF RECEIPT OR ISSUANCE |
|---|---|---|---|
| 1 | 1 | Appellant - Appeal - Involuntary Resignation | June 21, 2012 |
| 2 | 1 | MSPB - Acknowledgment Order | August 10, 2012 |
| 3 | 1 | Agency - Designation of Representative | August 10, 2012 |
| 4 | 1 | MSPB - Jurisdiction Order | August 10, 2012 |
| 5 | 1 | Agency - Agency File | August 30, 2012 |
| 6 | 1 | MSPB - Consolidation Order | August 30, 2012 |
| 7 | 1 | MSPB - Order Suspending Case Processing | August 30, 2012 |
| 8 | 1 | Appellant - Change of e-Filing Status | September 21, 2012 |
| 9 | 1 | Appellant - Response to Order on Jurisdiction and Proof Requirements dated 8/10/2012 | September 21, 2012 |
| 10 | 2 | Agency - Request for Extension of Time | September 25, 2012 |
| 11 | 2 | MSPB - Order Granting Extension of Time | September 25, 2012 |
| 12 | 2 | Agency - Agency Response Re. Jurisdiction | October 02, 2012 |
| 13 | 2 | Appellant - Appellant's Reply to Agency Response Regarding Involuntary Resignation | October 04, 2012 |
| 14 | 2 | Appellant - Appellant's Second Reply to Agency Response | October 15, 2012 |
| 15 | 2 | MSPB - Initial Decision | December 26, 2012 |

Consolidation Listing

Raiszadeh, Amanda Mojdeh

DC-0752-12-0648-I-1

| Secondary Applellant | Secondary Docket Nbr, | Joined Consolidation | Left Consolidation |
|---|---|---|---|
| Raiszadeh, Amanda Mojdeh | DC-1221-12-0452-W-1 | 08/30/2012 | |

INDEX                                        Page 1 of 2

AMANDA MOJDEH RAISZADEH

v.

DEPARTMENT OF HOMELAND SECURITY

MSPB Docket No.   DC-1221-12-0452-W-1

Active Secondary to     DC-0752-12-0648-I-1     Raiszadeh, Amanda Mojdeh

INDIVIDUAL RIGHT OF ACTION (IRA)

| TAB | VOLUME | DESCRIPTION OF DOCUMENT | DATE OF RECEIPT OR ISSUANCE |
|---|---|---|---|
| 1 | 1 | Appellant - Initial Appeal | April 06, 2012 |
| 2 | 1 | MSPB - Acknowledgment Order | April 10, 2012 |
| 3 | 1 | MSPB - Jurisdiction Order | April 10, 2012 |
| 4 | 1 | Agency - Agency Representative Addition | April 11, 2012 |
| 5 | 1 | Appellant - Response to Timeliness | April 23, 2012 |
| 6 | 1 | Agency - Agency Representative Addition | April 25, 2012 |
| 7 | 1 | Agency - Agency File | April 30, 2012 |
| 8 | 1 | MSPB - Summary of Conference Call | May 21, 2012 |
| 9 | 1 | MSPB - Hearing Order | May 21, 2012 |
| 10 | 1 | MSPB - Order Suspending Case Processing | May 25, 2012 |
| 11 | 1 | Appellant - Change of e-Filing Status | May 30, 2012 |
| 12 | 1 | Appellant - Withdrawal of appeal filed under DC-3151-12-0444-I-1 and Request for Leave | May 30, 2012 |
| 13 | 1 | Agency - Agency Representative Addition | June 13, 2012 |
| 14 | 2 | Appellant - Response to Agency's Agency's Narrative dated 4/30/2012 | June 21, 2012 |
| 15 | 2 | MSPB - Second Order on IRA Jurisdiction and Proof Requirements | June 25, 2012 |
| 16 | 2 | Appellant - Appellant's Respomse to Second Order on IRA Jurisdiction | July 06, 2012 |
| 17 | 3 | Agency - Agency Response to Second Order on IRA Jurisdiction and Proof Requirements | July 12, 2012 |

| 18 | 3 | Appellant - Appellant's Submission of New and Material Evidence | July 23, 2012 |
| 19 | 3 | MSPB - Order of Consolidation | August 30, 2012 |

INDEX                                                            Page 1 of 3

AMANDA MOJDEH RAISZADEH

v.

DEPARTMENT OF HOMELAND SECURITY

MSPB Docket No.  DC-0752-12-0648-I-2

IA-REFORM ACT MERIT

| TAB | VOLUME | DESCRIPTION OF DOCUMENT | DATE OF RECEIPT OR ISSUANCE |
|---|---|---|---|
| 1 | 1 | MSPB - Initial Appeal | August 06, 2013 |
| 2 | 1 | Appellant - Notice of Change of Address | September 19, 2013 |
| 3 | 1 | MSPB - Preliminary Status Order | September 20, 2013 |
| 4 | 1 | MSPB - Order and Summary of Status Conference | October 24, 2013 |
| 5 | 1 | Appellant - Request for Leave to Take Deposition of James Izzard | October 30, 2013 |
| 6 | 1 | Agency - Agency Response to Appellant's Request for Leave to Depose James Izzard | November 04, 2013 |
| 7 | 1 | MSPB - Order Granting the Appellant's Discovery Request | November 12, 2013 |
| 8 | 1 | MSPB - Order Suspending Case Processing | November 13, 2013 |
| 9 | 1 | Appellant - Appellant's Retroactivity Brief | December 12, 2013 |
| 10 | 1 | Agency - Agency Response to Appellant's Retroactivity Brief | December 18, 2013 |
| 11 | 1 | Appellant - Motion to Compel and for Sanctions | December 31, 2013 |
| 12 | 1 | Agency - Agency Request for Extension for Response to Motion to Compel | December 31, 2013 |
| 13 | 1 | Appellant - Reply to Agency Response on Retroactivity Issues | January 01, 2014 |
| 14 | 1 | Appellant - Appellant's Response to Agency Request for Extension | January 01, 2014 |
| 15 | 1 | Agency - Agency Response to Appellant's Motion to Compel and Sanctions | January 13, 2014 |
| 16 | 1 | MSPB - Order Denying the Appellant's Motion to Compel | January 14, 2014 |

| 17 | 1 | MSPB - Hearing Order | January 14, 2014 |
| 18 | 1 | Agency - Agency Prehearing Submissions Part I | January 17, 2014 |
| 19 | 2 | Agency - Agency Prehearing Submissions Part II | January 17, 2014 |
| 20 | 2 | Appellant - Appellant's Prehearing Submission | January 17, 2014 |
| 21 | 2 | Agency - Agency Prehearing Submissions Part III (Final) | January 17, 2014 |
| 22 | 2 | Appellant - Motion for Issuance of Subpoenas | January 17, 2014 |
| 23 | 2 | Agency - Agency Request to Retrieve Privileged Communication | January 21, 2014 |
| 24 | 2 | Appellant - Response to Agency Request to Retrieve | January 27, 2014 |
| 25 | 2 | Appellant - Appellant's Objections to Agency Exhibits | January 27, 2014 |
| 26 | 2 | MSPB - Order and Summary of Prehearing Conference | February 05, 2014 |
| 27 | 2 | Agency - Agency Resubmission of Exhibits 9 and 13 | February 06, 2014 |
| 28 | 2 | Appellant - Appellant's Supplemental Designation of Exhibits | February 10, 2014 |
| 29 | 2 | MSPB - Order Rescheduling | February 19, 2014 |
| 30 | 3 | Appellant - Appellant's Exhibits Submitted at the Hearing | February 27, 2014 |
| 31 | 3 | Appellant - Appellant's Motion for Extension of Time | March 05, 2014 |
| 32 | 3 | Appellant - Motion for Leave to Call Rebuttal Witnesses | March 05, 2014 |
| 33 | 3 | Agency - Agency Response to Appellant's Request for Rebuttal Witnesses | March 06, 2014 |
| 34 | 3 | Agency - Agency Response to Appellant's Request for Extension for Closing Statements | March 07, 2014 |
| 35 | 3 | MSPB - Order | March 10, 2014 |
| 36 | 4 | MSPB - Conference Call CD | March 12, 2014 |
| 37 | 3 | Appellant - Appellant's Motion for Reconsideration of Order | March 12, 2014 |

| 38 | 3 | MSPB - Order Addressing the Appellant's Submission of Documents and Other Matters | March 13, 2014 |
| 39 | 4 | Appellant - Appellant's Closing Argument | March 28, 2014 |
| 40 | 4 | Agency - Agency Closing Statement | March 28, 2014 |
| 41 | 4 | Appellant - Notice of Change of Address | May 28, 2014 |
| 42 | 4 | MSPB - Hearing CD | January 20, 2015 |
| 43 | 4 | MSPB - Initial Decision | January 27, 2015 |
| 44 | 4 | MSPB - Certificate of Service | January 27, 2015 |

**IN A SEPARATE FOLDER**

| | |
|---|---|
| Other - Hearing Transcript - Volume 1 of 2 | February 27, 2014 |
| Other - Hearing Transcript - Volume 2 of 2 | February 27, 2014 |
| Other – Hearing Tracking Sheet | February 27, 2014 |

Consolidation Listing

Raiszadeh, Amanda Mojdeh

DC-0752-12-0648-I-2

| Secondary Applellant | Secondary Docket Nbr, | Joined Consolidation | Left Consolidation |
|---|---|---|---|
| Raiszadeh, Amanda Mojdeh | DC-1221-12-0452-W-2 | 09/18/2013 | |

INDEX                                              Page 1 of 1

## AMANDA MOJDEH RAISZADEH

v.

## DEPARTMENT OF HOMELAND SECURITY

MSPB Docket No.  DC-0752-12-0648-I-2

IA-REFORM ACT MERIT - PETITION FOR REVIEW

| TAB | VOLUME | DESCRIPTION OF DOCUMENT | DATE OF RECEIPT OR ISSUANCE |
|---|---|---|---|
| 1 | 1 | Appellant - Supplement to PFR | March 03, 2015 |
| 2 | 1 | Appellant - Supplement to PFR | March 03, 2015 |
| 3 | 1 | Appellant - Supplement to PFR | March 04, 2015 |
| 4 | 1 | Appellant - Supplement to PFR | March 04, 2015 |
| 5 | 1&2 | Appellant - Petition for Review | March 06, 2015 |
| 6 | 2 | MSPB - Petition For Review Acknowledgment Letter | March 12, 2015 |
| 7 | 2 | Agency - Response to Petitioner's Petition for Review dated 3/3/2015 | March 27, 2015 |
| 8 | 2 | Appellant - Response to Agency Representative's Appellant's Reply   dated 3/27/2015 | April 06, 2015 |
| 9 | 2 | MSPB - Order | December 09, 2015 |
| 10 | 2 | MSPB - Certificate of Service | December 09, 2015 |

Consolidation Listing

Raiszadeh, Amanda Mojdeh

DC-0752-12-0648-I-2

| Secondary Appellant | Secondary Docket Nbr, | Joined Consolidation | Left Consolidation |
|---|---|---|---|
| Raiszadeh, Amanda Mojdeh | DC-1221-12-0452-W-2 | 09/18/2013 | |

INDEX

AMANDA MOJDEH RAISZADEH

v.

DEPARTMENT OF HOMELAND SECURITY

MSPB Docket No.   DC-1221-12-0452-B-1

BOARD ORDERED REMAND

| TAB | VOLUME | DESCRIPTION OF DOCUMENT | DATE OF RECEIPT OR ISSUANCE |
|---|---|---|---|
| 1 | 1 | MSPB - Order | December 09, 2015 |
| 2 | 1 | MSPB - Acknowledgment Order | February 25, 2016 |
| 3 | 1 | Appellant - Request for Status Hearing | May 04, 2016 |
| 4 | 1 | Agency - Notice of Unavailability | May 05, 2016 |
| 5 | 1 | Appellant - Reply to Agency Response to Appellant's Request for Status Hearing | May 16, 2016 |
| 6 | 1 | MSPB - Initial Decision | November 23, 2016 |
| 7 | 1 | MSPB - Certificate of Service | November 23, 2016 |

INDEX

AMANDA MOJDEH RAISZADEH

v.

DEPARTMENT OF HOMELAND SECURITY

MSPB Docket No.   DC-1221-12-0452-B-1

BOARD ORDERED REMAND - PETITION FOR REVIEW

| TAB | VOLUME | DESCRIPTION OF DOCUMENT | DATE OF RECEIPT OR ISSUANCE |
|---|---|---|---|
| 1 | 1 | Appellant - Request for Extension of Time to File PFR | December 21, 2016 |
| 2 | 1 | MSPB - Extension of Time Order | December 22, 2016 |
| 3 | 1 | Appellant - Request for Extension of Time to File PFR | January 09, 2017 |
| 4 | 1 | MSPB - Extension of Time Order | January 09, 2017 |
| 5 | 1 | Appellant - Petition For Review | January 10, 2017 |
| 6 | 1 | MSPB - Petition For Review Acknowledgment Letter | January 11, 2017 |
| 7 | 1 | Agency - Response to Appellant's Petition for Review dated 1/10/2017 | February 02, 2017 |
| 8 | 1 | Appellant - Reply to Agency Response to PFR | February 09, 2017 |
| 9 | 1 | MSPB - Final Order | July 20, 2023 |
| 10 | 1 | MSPB - Certificate of Service | July 20, 2023 |

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
### WASHINGTON REGIONAL OFFICE

| | |
|---|---|
| AMANDA MOJDEH RAISZADEH,<br>Appellant,<br><br>v.<br><br>DEPARTMENT OF HOMELAND<br>  SECURITY,<br>Agency. | DOCKET NUMBER(S)<br>DC-0752-12-0648-I-1<br>DC-1221-12-0452-W-1<br><br><br>DATE: December 26, 2012 |

Thomas F. Hennessy, Vienna, Virginia, for the appellant.

Laura J. Carroll, South Burlington, Vermont, for the agency.

**BEFORE**
Sherry Linville
Administrative Judge

## INITIAL DECISION

On April 6, 2012, the appellant filed an individual right of action (IRA) appeal with the Board, alleging that the agency had lowered her performance rating and terminated her during her probationary period in retaliation for her engaging in protected whistleblowing. *See Raiszadeh v. Department of Homeland Security,* DC-1221-12-0452-W-1. In response the appeal, on April 30, 2012, the agency argued that in fact the appellant had resigned from federal service. On June 21, 2012, the appellant filed a response to the agency's narrative arguing that her resignation was involuntary. On August 9, 2012, I conducted a telephonic status conference with the parties' counsel of record in order to address the appellant's involuntary resignation allegation and the processing of

the appellant's IRA appeal.  During the status conference, I informed the parties that because the appellant had alleged an involuntary resignation, it was necessary to determine the merits of that claim before adjudicating the appellant's IRA appeal as it is well-settled that a voluntary resignation is not a personnel action in an IRA.  *See Jackson v. Department of Veterans Affairs,* 95 M.S.P.R. 152, 157, ¶ 15 (2003).  Thus, another appeal was opened to address whether the resignation was involuntary.  As explained below, both  appeals are DISMISSED WITHOUT PREJUDICE.

The Whistleblower Protection Enhancement Act of 2012 was signed into law on November 27, 2012, significantly changing current whistleblower law for federal employees.[1]  The Merit Systems Protection Board has certified an interlocutory appeal on the issue of whether this significant change in the law applies retroactively to appeals pending before the bill was passed.[2]

Dismissal of an appeal without prejudice is a procedural option committed to the sound discretion of the administrative judge. *Gardner v. Department of the Treasury*, 68 M.S.P.R. 258, 661-62 (1995). A dismissal without prejudice is appropriate when it is in the interest of fairness, due process, and administrative efficiency. *Gidwani v. Department of Veterans Affairs*, 74 M.S.P.R. 509, 511 (1997).  I find that the proper adjudication of this case is dependent on the resolution of the legal issue of whether the WPEA applies retroactively. Therefore, the appeal will automatically be refiled upon resolution by the Board of the retroactivity of the WPEA within the pending interlocutory appeal of *Day v. Department of Homeland Security.*

---

[1] Among other reforms, federal employees now are protected (in addition to already-existing scenarios) from reprisal if they: are not the first person to disclose misconduct; disclose misconduct to co-workers or supervisors; disclose the consequences of a policy decision; or blow the whistle while carrying out their job duties.

[2] The interlocutory appeal was certified on Friday, December 14, 2012 in *Day v. Department of Homeland Security*, DC-1221-12-0528-W-1.

## DECISION

The appeal is DISMISSED WITHOUT PREJUDICE.


FOR THE BOARD:                    _____
                                 Sherry Linville
                                 Administrative Judge


## NOTICE TO APPELLANT

This initial decision will become final on **January 30, 2013**, unless a petition for review is filed by that date. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision. If you are represented, the 30-day period begins to run upon either your receipt of the initial decision or its receipt by your representative, whichever comes first. You must establish the date on which you or your representative received it. The date on which the initial decision becomes final also controls when you can file a petition for review with the Court of Appeals for the Federal Circuit. The paragraphs that follow tell you how and when to file with the Board or the federal court. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review.

If the other party has already filed a timely petition for review, you may file a cross petition for review. Your petition or cross petition for review must

state your objections to the initial decision, supported by references to applicable laws, regulations, and the record.  You must file it with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.
Washington, DC 20419

A petition or cross petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing.  A petition submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's e-Appeal website (https://e-appeal.mspb.gov).

## **Criteria for Granting a Petition or Cross Petition for Review**

Pursuant to 5 C.F.R. § 1201.115 (eff. Nov. 13, 2012), the Board normally will consider only issues raised in a timely filed petition or cross petition for review. Situations in which the Board may grant a petition or cross petition for review include, but are not limited to, a showing that:

(a) The initial decision contains erroneous findings of material fact. (1) Any alleged factual error must be material, meaning of sufficient weight to warrant an outcome different from that of the initial decision. (2) A petitioner who alleges that the judge made erroneous findings of material fact must explain why the challenged factual determination is incorrect and identify specific evidence in the record that demonstrates the error. In reviewing a claim of an erroneous finding of fact, the Board will give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing.

(b) The initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case. The petitioner must explain how the error affected the outcome of the case.

(c) The judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case.

(d) New and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. To constitute new evidence, the information contained in the documents, not just the documents themselves, must have been unavailable despite due diligence when the record closed.

As stated in 5 C.F.R. § 1201.114(h) (eff. Nov. 13, 2012), a petition for review, a cross petition for review, or a response to a petition for review, whether computer generated, typed, or handwritten, is limited to 30 pages or 7500 words, whichever is less. A reply to a response to a petition for review is limited to 15 pages or 3750 words, whichever is less. Computer generated and typed pleadings must use no less than 12 point typeface and 1-inch margins and must be double spaced and only use one side of a page. The length limitation is exclusive of any table of contents, table of authorities, attachments, and certificate of service. A request for leave to file a pleading that exceeds the limitations prescribed in this paragraph must be received by the Clerk of the Board at least 3 days before the filing deadline. Such requests must give the reasons for a waiver as well as the desired length of the pleading and are granted only in exceptional circumstances. The page and word limits set forth above are maximum limits. Parties are not expected or required to submit pleadings of the maximum length. Typically, a well-written petition for review is between 5 and 10 pages long.

If you file a petition or cross petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record. A petition for review must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you or your representative more than 5 days after the date of issuance, 30 days after the date

you or your representative actually received the initial decision, whichever was first. If you claim that you and your representative both received this decision more than 5 days after its issuance, you have the burden to prove to the Board the earlier date of receipt. You must also show that any delay in receiving the initial decision was not due to the deliberate evasion of receipt. You may meet your burden by filing evidence and argument, sworn or under penalty of perjury (*see* 5 C.F.R. Part 1201, Appendix 4) to support your claim. The date of filing by mail is determined by the postmark date. The date of filing by fax or by electronic filing is the date of submission. The date of filing by personal delivery is the date on which the Board receives the document. The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service. Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party. *See* 5 C.F.R. § 1201.4(j). If the petition is filed electronically, the online process itself will serve the petition on other e-filers. *See* 5 C.F.R. § 1201.14(j)(1).

A cross petition for review must be filed within 25 days after the date of service of the petition for review.

## JUDICIAL REVIEW

If you are dissatisfied with the Board's final decision, you may file a petition with:

The United States Court of Appeals
for the Federal Circuit
717 Madison Place, NW.
Washington, DC 20439

You may not file your petition with the court before this decision becomes final. To be timely, your petition must be received by the court no later than 60 calendar days after the date this initial decision becomes final.

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in

Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703).  You may read this law, as well as review the Board's regulations and other related material, at our website, http://www.mspb.gov.  Additional information is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

### NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

Appellant

U.S. Mail                     Amanda Mojdeh Raiszadeh
                              5973 Havener House Way
                              Centreville, VA 20120

Appellant Representative

Electronic Mail               Thomas F. Hennessy
                              8229 Boone Blvd., Suite 310
                              Vienna, VA 22182

Agency Representative

Electronic Mail               Laura J. Carroll
                              Department of Homeland Security
                              Associate Counsel
                              Office of the Principal Legal Advisor
                              70 Kimball Avenue, Room 103
                              South Burlington, VT 05403

| December 26, 2012 | /s/ |
|---|---|
| (Date) | Sheila Stanton |
|  | Paralegal Specialist |

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
## ATLANTA REGIONAL OFFICE

| | |
|---|---|
| AMANDA MOJDEH RAISZADEH,<br>Appellant,<br><br>v.<br><br>DEPARTMENT OF HOMELAND<br>  SECURITY,<br>Agency. | DOCKET NUMBER<br>DC-0752-12-0648-I-2<br>DC-1221-12-0452-W-2<br><br><br>DATE: January 27, 2015 |

Thomas F. Hennessy, Fairfax, Virginia, for the appellant.

Laura J. Carroll, South Burlington, Vermont, for the agency.

### BEFORE
Sherry Linville
Administrative Judge

## INITIAL DECISION

The appellant timely filed an individual right of action (IRA) appeal with the Merit Systems Protection Board (Board) and alleged the agency gave her a bad performance review and terminated her during her probationary period in reprisal for her protected whistleblower activity.  Appeal File, Docket No. DC-1221-12-0452-W-1, (AF-W-1) Tab 1.  On February 27 and March 12, 2014, I held the appellant's requested hearing after finding that the Board has jurisdiction over this appeal.  5 U.S.C. § 1221(a) and 1214(a)(3); *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001).  For the reasons explained below, the appellant's request for corrective action is DENIED.

## ANALYSIS AND FINDINGS

<u>Background</u>

Effective March 18, 2007, the agency appointed the appellant to the position of Citizen and Immigration Services (CIS) Assistant, GS-1802-07, which was later converted to the position of Supervisory CIS Assistant, GS-1802-09, on April 1, 2007.  Appeal File, Docket No. DC-0752-12-0648-I-2, (AF-I-2) Tab 18 at 12-13.  The appellant had no prior experience working for the federal government and was required to complete a probationary period of one year.  *Id.* In her new position, the appellant supervised approximately seven to eight clerical/support employees of the CIS Washington Field Office in Fairfax, Virginia.  *Id.* at 23-31, 45.  The appellant's immediate supervisor was Susan Dibbins who was the Field Office Director, GS-15.  Hearing Transcript, Vol. 2  at 134-35.

In November/December 2007, the appellant and a coworker, Cheri Bailey, met with the agency's Office of Inspector General (OIG).  AF-1-2, Tab 30, Exhibit I.  During this meeting, the appellant complained of several incidents involving her subordinate employees, and that on June 7, 2007, a safe was left open containing naturalization certificates.  *Id.*  The appellant acknowledged that she "immediately notified Ms. Dibbins" of the unsecured safe, and that she conducted an audit the following Monday.  During the audit, she discovered 300 naturalization certificates that "were not accounted for," i.e., she was unable to locate a requisition (G-514) form.  *Id.*  While she recognized that she was later provided a copy of the G-514 form for the certificates, she "still [had her] concern."  *Id.*  On January 2, 2008, the appellant sent Timothy Herlihy, OIG, a letter outlining her complaints.  *Id.*

On December 28, 2007, Ms. Dibbins rated the appellant as unacceptable on three of her Core Competencies (communication, teamwork and cooperation, and leadership) resulting in an overall performance rating of unacceptable.  AF-I-2, Tab 19 at 6-16.  The appellant electronically signed the performance evaluation

on January 11, 2008.  *Id*. On February 11, 2008, Ms. Dibbins sent an email to Mr. Berkenkemper stating that she wanted to terminate the appellant because "[s]ome events happened last week that were the final straw and she cannot continue in a supervisory role here any longer."  AF-I-2, Tab 30, Exhibit D.  On February 19, 2008, Ms. Dibbins issued the appellant her termination notice, which cited deficiencies in her performance during her probationary period.  AF-1-2, Tab 18 at 46-47.  While the termination letter effectuated the appellant's termination on February 19th, the agency permitted the appellant to submit her resignation on February 29, 2008, retroactive to the termination date.  *Id*. at 50.

The appellant filed an equal employment opportunity complaint against the agency, asserting that she was subjected to discrimination and a hostile work environment on the bases of her national origin (Iran) and religion (Islam) on June 4, 2008.  AF-W-1, Tab 7 at 30-33.  On June 16, 2010, Equal Employment Opportunity Commission Administrative Judge Frances del Toro issued a summary judgment in the agency's favor.  *Id*. at 9-19.  The appellant then filed a civil action in the Eastern District of Virginia, which was also dismissed in favor of the agency on March 16, 2012.  *Id*. at 3-4.  In the meantime, on September 1, 2011, the appellant filed a complaint with the Office of Special Counsel (OSC), asserting that her poor performance evaluation and subsequent termination were in reprisal for her disclosures to Agent Herlihy in 2007.  AF-W-1, Tab 5, Attachment 2.  In response to OSC questions about the delay in filing the complaint, the appellant's counsel replied that the appellant was given "a poor performance evaluation and a notice that she was terminated because of her race and national origin ***and*** because she complained to OIG," and since her termination, the appellant had "focused on the her claims under Title VII and the Civil Rights Act of 1964, and more recently it has been her intent to obtain some information that would support her OSC complaint" from Ms. Dibbins' deposition.  *Id*., Attachment 4 (emphasis in original).

On April 6, 2012, the appellant filed an individual right of action (IRA) appeal, in which she alleged that the agency gave her a lower performance rating and removed her from federal service in retaliation for her alleged whistleblowing activities.[1]  AF-W-1, Tab 1.  By Order dated April 10, 2012, the parties were notified of the Board's proof requirements when adjudicating an IRA appeal.  AF-W-1, Tab 3.  The appellant submitted a response on April 23, 2012, and the agency submitted the agency's file on April 30, 2012.  AF-W-1, Tabs 5, 7.  In its narrative response, the agency moved for a dismissal, arguing that the appeal should be barred by the doctrine of laches; the appellant's alleged whistleblowing activity was not a contributing factor in the agency's decision; and/or the appellant failed to raise a nonfrivolous allegation that her alleged disclosures were protected under 5 U.S.C. § 2302(b)(8).  AF-W-1, Tab 7.  In its response, the agency also argued that the appellant had submitted her resignation. *Id*.  The appellant filed a second response on June 22, 2012, addressing the agency's narrative response and argued that she had not resigned voluntarily. AF-W-1, Tab 14.  Based on this information, a second case was opened under docket number DC-0752-12-0648-I-1 and the appeals were consolidated.  AF-W-1, Tab 19.

To clarify certain jurisdictional issues, I issued a Second Order on IRA Jurisdiction and Proof Requirements on June 25, 2012.  AF-W-1, Tab 15.  The appellant submitted a third response addressing the jurisdictional and exhaustion issues on July 6, 2012, and the agency submitted its response on July 12, 2012. AF-W-1, Tabs 16, 17.  The appellant submitted a fourth response to these issues on July 20, 2012.  AF-W-1, Tab 18.  Thereafter, both appeals were dismissed

---

[1] Although OSC had not issued a close-out letter with rights to appeal to the Board, the appellant's appeal was not premature because 120 days had passed since she had filed her complaint.  *See* 5 U.S.C. § 1214(a)(3)(B); AF-W-1, Tab 5.

without prejudice pending the Board's decision in *Day v. Department of Homeland Security*, 2013 M.S.P.B. 49 (June 26, 2013). AF-W-1, Tab 26.

The appeals were refiled *sua sponte* on August 6, 2013. Appeal File Docket Number DC-0752-12-0648-I-1 (AF-I-2), Tab 1. During a telephone conference on October 24, 2013, I informed the appellant's counsel that I still had questions concerning whether she had exhausted her administrative remedies with the OSC and provided the parties with another opportunity to brief this issue and any retroactivity issues. AF-I-2, Tabs 4, 7. Again, both parties submitted responses to these issues. AF-I-2, Tabs 9, 10, 13.

At the prehearing conference, I found that the appellant had raised a nonfrivolous allegation that she made a protected disclosure when in late 2007, she informed the agency's Office of Inspector General (OIG) of the June 7, 2007 safe incident. AF-1-2, Tab 30, Exhibit I. (Number 1 as provided in the letter dated January 2, 2008, to Agent Herlihy). As to the remaining disclosures, however, I found that the appellant either failed to exhaust her administrative remedies before the OSC and/or did not raise nonfrivolous allegations that she engaged in whistleblowing activity by making a protected disclosure. *Id*. Further, I found that the appellant had raised only two personnel actions to OSC: low performance rating and probationary termination, and thus, those were the personnel actions addressed at the hearing.[2] *Id*. As stated previously, the hearing was held on February 27 and March 12, 2014.

General Legal Standard

The Board has jurisdiction over an IRA appeal if the appellant has exhausted her administrative remedies before the OSC and makes nonfrivolous allegations that: (1) She engaged in whistleblowing activity by making a

---

[2] With regard to the appellant's involuntary resignation claim, because the appellant was a probationary employee at the time, I found that the Board has jurisdiction over her appeal based on her IRA, and thus, her involuntary resignation claim was subsumed in the pending IRA. AF-I-2, Tab 26.

protected disclosure; and (2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action. *Yunus*, 242 F.3d 1367, 1371.

For an appellant who establishes Board jurisdiction over her IRA appeal to be entitled to corrective action over her claims, she must establish by a preponderance of the evidence[3] the following four elements: (1) the management official has the authority to take, recommend, or approve any personnel action; (2) the aggrieved employee made a disclosure protected under 5 U.S.C. § 2302(b)(8)(A); (3) the management official used her authority to take, or refuse to take, a personnel action against the aggrieved employee; and (4) the protected disclosure was a contributing factor in the agency's personnel action. *See Chambers v. Department of Interior*, 602 F.3d 1370, 1376 (Fed. Cir. 2010); *Lachance v. White*, 174 F.3d 1378, 1380 (Fed. Cir. 1999), *cert. denied*, 528 U.S. 1153 (2000). If the appellant meets that burden, the Board must order corrective action unless the agency establishes by clear and convincing evidence[4] that it would have taken the same personnel action in the absence of the disclosure. *Whitmore*, 680 F.3d at 1364. Evidence only clearly and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly detracts from that conclusion. *Id.* at 1368.

A "personnel action" is defined as follows: (i) an appointment; (ii) a promotion; (iii) an action under 5 U.S.C. chapter 75 or other disciplinary or corrective action; (iv) a detail, transfer, or reassignment; (v) a reinstatement; (vi)

---

[3] A preponderance of the evidence is that amount of relevant evidence which a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely true than untrue. 5 C.F.R. § 1201.56(c)(2).

[4] Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established. 5 C.F.R. § 1209.4(d).

a restoration; (vii) a reemployment; (viii) a performance evaluation under 5 U.S.C. chapter 43; (ix) a decision concerning pay, benefits, or awards, or concerning education or training if the education or training may reasonably be expected to lead to an appointment, promotion, performance evaluation, or other personnel action; (x) a decision to order psychiatric testing or examination; (xi) the implementation or enforcement of any nondisclosure policy, form, or agreement; and (xii) any other significant change in duties, responsibilities, or working conditions.  5 U.S.C. § 2302(a)(2)(A).  *See Mattil v. Department of State,* 118 M.S.P.R. 662, ¶ 14 (2012).

Protected Disclosure

A protected disclosure is a disclosure that the appellant reasonably believes evidences a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.  *See* 5 U.S.C. § 2302(b)(8)(A); *Chambers v. Department of Interior*, 515 F.3d 1362, 1367 (Fed. Cir. 2008).  A reasonable belief exists if a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the appellant could reasonably conclude that the actions of the government evidence one of the categories of wrongdoing set out in 5 U.S.C. § 2302(b)(8)(A).  *Lachance*, 174 F.3d 1378, 1381.

To establish that the appellant had a reasonable belief that the information she disclosed evidenced one of these categories of wrongdoing, she need not prove that the condition disclosed actually established a regulatory violation or any of the other situations detailed under 5 U.S.C. § 2302(b)(8)(A); rather, she must only show that the matter disclosed was one which a reasonable person in her position would believe evidenced any of the situations specified in 5 U.S.C. § 2302(b)(8).  *See Huffman v. Office of Personnel Management*, 92 M.S.P.R. 429, ¶ 9 (2002).

The disclosure cannot be based on a "purely subjective" belief. *Giove v. Department of Transportation,* 230 F.3d 1333, 1338 (Fed. Cir. 2000); *Lachance*, 174 F.3d 1378, 1380-81. Rather, it must be based on a reasonable interpretation of the events available to the appellant when she made her disclosure. *See Askew v. Department of the Army*, 88 M.S.P.R. 674, 678-79 (2001). The Board is required to consider all evidence presented on this issue, including that which detracts from a reasonable belief. *See Haley v. Department of the Treasury*, 977 F.2d 553, 557 (Fed. Cir. 1992), *cert. denied*, 508 U.S. 950 (1993).

In determining if the appellant had a reasonable belief, the Board considers whether she was familiar with the alleged improper agency activities and was therefore in a position to form such a belief as well as whether her belief was shared by other similarly-situated employees. *See Chianelli v. Environmental Protection Agency,* 86 M.S.P.R. 651, ¶ 14 (2000), *aff'd*, 8 Fed. Appx. 971 (Fed. Cir.), *cert. denied*, 122 S. Ct. 570 (2001); *McGrath v. Department of the Army*, 83 M.S.P.R. 48, ¶ 15 (1999). Whether the agency investigated the appellant's claims may be considered in determining their legitimacy. *See Kinan v. Department of Defense*, 87 M.S.P.R. 561, ¶¶ 13-14 (2001). Here, the appellant has asserted that she had a reasonable belief that her disclosure of the June 7, 2007 safe incident was a violation of law, rule, or regulation and/or a substantial and specific danger to public health or safety, and that her belief was based on the fact that "300 naturalization certificates were unaccounted for," and the "recent arrest of DHS employee Robert Schofield for selling naturalization certificates." AF-W-1, Tab 14 at 10.

Early in this appeal the agency moved to dismiss based on the doctrine of laches arguing that "memories have faded" and it was "prejudiced in its defense" as there were no records or documents preserved on the whistleblowing issues. While I denied the agency's motion, its case most certainly has suffered as it was unable to produce a single document relevant to the June 7, 2007 safe incident, and I am relying solely on the memories of the witnesses that testified. The

appellant's case, however, also appears to have suffered from the passage of time because she failed to address the June 7, 2007 safe incident in any substantive manner. The appellant testified that the safe was left open on two occasions. Hearing Transcript, Vol. 1 at 42-46. While her testimony is vague and imprecise, it seems that the first time she testified the safe was left open was in October, not June. Even more confusing, the appellant testified that the "second time the safe was left open" was in November 2007 and that was when she discovered the 300 "unaccounted for" naturalization certifications. Her OSC complaint, however, never mentions the safe being left open in October or November. Indeed, the only date provided in the appellant's disclosure was June 7, 2007, and I cannot discern from her testimony whether the safe was even left open on that date. Thus, based on the appellant's testimony, I cannot conclude that she had a reasonable belief that the unsecured safe in June was an improper agency activity.

Even if I assume that the appellant's memory had failed her and the events that she described in November actually occurred in June, I do not believe she carried her burden of showing that her disclosure was protected. While the appellant has repeatedly tied this incident to the Schofield arrest, there was absolutely no suggestion of fraud associated with the 300 naturalization certificates. There is no indication that certificates were missing or had been sold. While I realize that the 300 certificates did not have a G-514 requisition form when the appellant performed her audit of the safe, that fact by itself does not provide a reasonable basis to believe that a violation of law occurred or that the public was in imminent danger. Moreover, it is undisputed that the appellant was provided a G-514 form for the certificates several days later, and thus, she knew that the certificates had been accounted for. Nevertheless, she failed to provide a reason why this was an insufficient remedy. Indeed, Ms. Dibbins' uncontroverted testimony indicated that they had appropriately addressed the situation by reporting "the [unsecured safe] up [their] chain of command," and sending a "significant incident report" to "the leadership of USCIS." Hearing

Transcript, Vol. 2 at 161-62. There is simply no evidence supporting the appellant's bald faced assertion that this was something other than a mistake. Thus, I unable to conclude that a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the appellant would believe that this incident constituted a violation of law, rule or regulation or that the incident concerned a danger to public health or safety. *Chambers,* 515 F.3d at 1369 (To determine whether a disclosed danger to public health or safety is sufficiently substantial and specific to warrant protection under the WPA, the likelihood and imminence of the alleged harm resulting from the danger must be considered.).

Further, I simply do not have confidence that the appellant herself reasonably believed that the missing G-514 report was a violation of law or a danger to public health or safety. If I assume the event occurred in June, she waited over 5 months to report her concerns to OIG, and I find it unbelievable that she would have failed to report this potential crime sooner if she believed it to be true, particularly in light of the Schofield arrest and the possibility that she could be implicated.[5] Finally, there is no record of an OIG complaint on file, which further calls into question the quality of the appellant's "proof." *See* AF-I-2, Tab 19. Absent a reasonable belief to support her allegation, I find that the appellant has failed to present a prima facie case of reprisal for whistleblowing. *Gergick v. General Services Administration*, 43 M.S.P.R. 651, 659 (1990).

---

[5] The appellant testified that the safe was located in her office and she was one of three people with the combination. Hearing Transcript, Vol. 1 at 38.

## DECISION

The appellant's request for corrective action is DENIED.


FOR THE BOARD:              _____/S/_____
                           Sherry Linville
                           Administrative Judge


## NOTICE TO APPELLANT

This initial decision will become final on **March 3, 2015**, unless a petition for review is filed by that date. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision. If you are represented, the 30-day period begins to run upon either your receipt of the initial decision or its receipt by your representative, whichever comes first. You must establish the date on which you or your representative received it. The date on which the initial decision becomes final also controls when you can file a petition for review with the Court of Appeals. The paragraphs that follow tell you how and when to file with the Board or the federal court. These instructions are important because if you wish to file a petition, you must file it within the proper time period.


## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review if you believe that the settlement agreement is unlawful, was involuntary, or was the result of fraud or mutual mistake. Your petition, with supporting evidence and argument, must be filed with Clerk of the Board at the address below.

If the other party has already filed a timely petition for review, you may file a cross petition for review. Your petition or cross petition for review must state your objections to the initial decision, supported by references to applicable laws, regulations, and the record. You must file it with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.
Washington, DC 20419

A petition or cross petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing. A petition submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's e-Appeal website (https://e-appeal.mspb.gov).

### Criteria for Granting a Petition or Cross Petition for Review

Pursuant to 5 C.F.R. § 1201.115, the Board normally will consider only issues raised in a timely filed petition or cross petition for review. Situations in which the Board may grant a petition or cross petition for review include, but are not limited to, a showing that:

(a) The initial decision contains erroneous findings of material fact. (1) Any alleged factual error must be material, meaning of sufficient weight to warrant an outcome different from that of the initial decision. (2) A petitioner who alleges that the judge made erroneous findings of material fact must explain why the challenged factual determination is incorrect and identify specific evidence in the record that demonstrates the error. In reviewing a claim of an erroneous finding of fact, the Board will give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing.

(b) The initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case. The petitioner must explain how the error affected the outcome of the case.

(c) The judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case.

(d) New and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. To constitute new evidence, the information contained in the documents, not just the documents themselves, must have been unavailable despite due diligence when the record closed.

As stated in 5 C.F.R. § 1201.114(h), a petition for review, a cross petition for review, or a response to a petition for review, whether computer generated, typed, or handwritten, is limited to 30 pages or 7500 words, whichever is less. A reply to a response to a petition for review is limited to 15 pages or 3750 words, whichever is less. Computer generated and typed pleadings must use no less than 12 point typeface and 1-inch margins and must be double spaced and only use one side of a page. The length limitation is exclusive of any table of contents, table of authorities, attachments, and certificate of service. A request for leave to file a pleading that exceeds the limitations prescribed in this paragraph must be received by the Clerk of the Board at least 3 days before the filing deadline. Such requests must give the reasons for a waiver as well as the desired length of the pleading and are granted only in exceptional circumstances. The page and word limits set forth above are maximum limits. Parties are not expected or required to submit pleadings of the maximum length. Typically, a well-written petition for review is between 5 and 10 pages long.

If you file a petition or cross petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record.  A petition for review

must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you or your representative more than 5 days after the date of issuance, 30 days after the date you or your representative actually received the initial decision, whichever was first.  If you claim that you and your representative both received this decision more than 5 days after its issuance, you have the burden to prove to the Board the earlier date of receipt.  You must also show that any delay in receiving the initial decision was not due to the deliberate evasion of receipt. You may meet your burden by filing evidence and argument, sworn or under penalty of perjury (*see* 5 C.F.R. Part 1201, Appendix 4) to support your claim.  The date of filing by mail is determined by the postmark date.  The date of filing by fax or by electronic filing is the date of submission.  The date of filing by personal delivery is the date on which the Board receives the document.  The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service.  Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party.  *See* 5 C.F.R. § 1201.4(j).  If the petition is filed electronically, the online process itself will serve the petition on other e-filers. *See* 5 C.F.R. § 1201.14(j)(1).

A cross petition for review must be filed within 25 days after the date of service of the petition for review.

## NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

## NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date this initial decision becomes final. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of this decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this decision only after it becomes final by filing in the United States Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within 60 days after the date on which this decision becomes final. *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. You may choose to request review of the Board's decision in the United States Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both. Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information about the United States Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is

contained within the court's <u>Rules of Practice</u>, and <u>Forms</u> 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through <u>http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.</u>

If you are interested in securing pro bono representation for an appeal to the United States Court of Appeals for the Federal Circuit, you may visit our website at <u>http://www.mspb.gov/probono</u> for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

Appellant

U.S. Mail                 Amanda Mojdeh Raiszadeh
                          5973 Havener House Way
                          Centreville, VA 20120


Appellant Representative

Electronic Mail           Thomas F. Hennessy
                          Virginia Family & Employment Law Center
                          4015 Chain Bridge Road, Suite G
                          Fairfax, VA 22030

                          Agency Representative

Electronic Mail           Laura J. Carroll
                          Department of Homeland Security
                          Associate Counsel
                          Office of the Principal Legal Advisor
                          70 Kimball Avenue, Room 103
                          South Burlington, VT 05403



| January 27, 2015 | /s/ |
|---|---|
| (Date) | JoAnn Atkinson |
| | Paralegal Specialist |

### UNITED STATES OF AMERICA
### MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| AMANDA MOJDEH RAISZADEH, | DOCKET NUMBERS |
| Appellant, | DC-0752-12-0648-I-2 |
| | DC-1221-12-0452-W-2 |
| v. | |
| DEPARTMENT OF HOMELAND | |
| SECURITY, | DATE: December 9, 2015 |
| Agency. | |

## THIS ORDER IS NONPRECEDENTIAL[1]

<u>Thomas F. Hennessy</u>, Esquire, Fairfax, Virginia, for the appellant.

<u>Laura J. Carroll</u>, Esquire, South Burlington, Vermont, for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### ORDER

¶1      The appellant has filed a petition for review of the initial decision, which denied her request for corrective action in this individual right of action (IRA) appeal. For the reasons discussed below, we GRANT the appellant's petition for review and REMAND MSPB Docket No. DC-1221-12-0452-W-2 to the regional

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

office for further adjudication in accordance with this Order.    Specifically, we find that it is necessary to remand the appeal for the administrative judge to assess whether the agency proved by clear and convincing evidence that it would have assigned the appellant an unacceptable performance rating and terminated her employment in the absence of her disclosure.

## BACKGROUND

¶2        The agency appointed the appellant to the position of Citizen and Immigration Services (CIS) Assistant in March 2007, and converted her position to a Supervisory CIS Assistant in April 2007.    *Raiszadeh v. Department of Homeland Security*, MSPB Docket No. DC-0752-12-0648-I-2, Appeal File (I-2 AF), Tab 18 at 11-12.    In November or December 2007, the appellant and a coworker met with the agency's Office of Inspector General (OIG).    *See id*. at 38; *see also* Hearing Transcript (HT), February 27, 2014, Volume (Vol.) II at 154. On December 28, 2007, the appellant's supervisor (S.D.) rated her performance as unacceptable overall.    I-2 AF, Tab 19 at 6-16.    In a January 2008 letter to OIG, the appellant reported that a safe containing sensitive naturalization certificates had been left open in June 2007.    I-2 AF, Tab 18 at 39.    On February 19, 2008, S.D. issued a termination notice to the appellant that cited performance deficiencies during her probationary period.[2]    *Id*. at 46-47.

¶3        In September 2011, the appellant filed a complaint with the Office of Special Counsel (OSC) asserting that the agency gave her a poor performance evaluation and terminated her in retaliation for her November 2007 disclosures to OIG, which included both the issue with the safe in June 2007, and information concerning other personnel problems in her office.[3]    I-2 AF, Tab 9 at 43-64.    The

---

[2] The agency later permitted the appellant to resign effective the day she was scheduled to be terminated.    I-2 AF, Tab 18 at 50.

[3] In June 2008, prior to her OSC complaint, the appellant filed an equal employment opportunity complaint.    *Raiszadeh v. Department of Homeland Security*, MSPB Docket No. DC-1221-12-0452-W-1, Initial Appeal File (W-1 IAF), Tab 7, Subtab 4h.    She then

appellant filed this IRA appeal in April 2012.[4]  *Raiszadeh v. Department of Homeland Security*, MSPB Docket No. DC-1221-12-0452-W-1, Initial Appeal File (W-1 IAF), Tab 1.  Although OSC did not issue a close-out letter to the appellant until July 2012, I-2 AF, Tab 21 at 90-96, because over 120 days had passed since she filed her OSC complaint, her appeal was deemed ripe for adjudication, *see* 5 U.S.C. § 1214(a)(3)(B).

¶4      At the prehearing conference, the administrative judge found that the appellant nonfrivolously alleged that she made a protected disclosure to OIG in November or December 2007, concerning the June 2007 safe incident.  I-2 AF, Tab 26 at 6-7.  However, as to the other claimed disclosures, the administrative judge found either that the appellant failed to exhaust before OSC or that they were not protected.  *Id*. at 7-12.  She also found, concerning the alleged personnel actions taken by the agency, that the Board only had jurisdiction over the appellant's performance appraisal and her termination.  *Id*. at 12-13.

---

filed a civil action in Federal court.  W-1 IAF, Tab 7 at 3-18 of 36.  The U.S. District Court for the Eastern District of Virginia granted the agency's motion for summary judgment of the civil action in March 2012.  *Id*.

[4] During the processing of the IRA appeal, the administrative judge opened a case sua sponte to address the appellant's claim that she was constructively discharged, *Raiszadeh v. Department of Homeland Security*, MSPB Docket No. DC-0752-12-0648-I-1.  I-2 AF, Tab 26 at 2.  She then joined the appeals, dismissed them without prejudice, and, upon their refiling, found that the constructive discharge appeal was subsumed by the pending IRA appeal.  *Id*. at 2-3, 15.  The appellant, however, already filed a separate appeal concerning the same action when she filed her probationary termination appeal, MSPB Docket No. DC-315I-12-0444-I-1.  The administrative judge properly dismissed that appeal as withdrawn upon the appellant's representative's request, and neither party petitioned for review of the initial decision.  *Raiszadeh v. Department of Homeland Security*, MSPB Docket No. DC-315I-12-0444-I-1, Initial Decision at 1-2 (May 31, 2012).  Because the appellant already filed, and subsequently withdrew, an appeal of the same action, we dismiss the constructive discharge appeal, MSPB Docket No. DC-0752-12-0648-I-2, and herein provide the appellant with her further right to review with respect to that case.

¶5 After a hearing on the merits, the administrative judge denied corrective action.[5]  I-2 AF, Tab 43, Initial Decision (ID) at 8-10.  Specifically, she found that the appellant failed to prove that she made a protected disclosure because she did not have a reasonable belief that her disclosure was protected.  *Id.*  The administrative judge did not address whether the disclosure was a contributing factor in the appellant's performance appraisal or termination, or whether the agency proved by clear and convincing evidence that it would have taken those actions in the absence of the disclosure.[6]

¶6 The appellant has timely petitioned for review.  Petition for Review (PFR) File, Tab 5.  She argues that the administrative judge erred in finding that she did not make a protected disclosure because the safe incident constituted a violation of a law, rule, or regulation, as well as a policy violation and specific danger to public safety.  *Id*. at 2.  The agency has responded in opposition to the petition for review.  PFR File, Tab 7.  The appellant has filed a reply.  PFR File, Tab 8.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶7 To establish a prima facie case of whistleblower retaliation, the appellant must prove, by preponderant evidence, that she made a protected disclosure that

---

[5] A hearing was held on February 27, 2014, I-2 AF, Tab 46, Hearing Compact Disc, and additional testimony was taken, via telephone, on March 12, 2014, I-2 AF, Tab 36, Conference Call Compact Disc (CCCD).  The record contains a complete written hearing transcript, HT, of the February 2014 hearing.  Although the appellant submits a copy of the conference call transcript on review, Petition for Review (PFR) File, Tab 5, Exhibit C, it is incomplete and it is not an official transcript.

[6] To the extent that the appellant now claims that she made disclosures concerning incidents with the safe other than the June 2007 incident, *see, e.g.*, PFR File, Tab 5 at 6, the Board does not have jurisdiction over such disclosures because the appellant has failed to exhaust them before OSC, *see Ward v. Merit Systems Protection Board*, 981 F.2d 521, 526 (1992).

was a contributing factor in a personnel action taken against her.[7]  *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015) (citing 5 U.S.C. § 1221(e)(1)).  If the appellant makes out a prima facie case, then the agency is given an opportunity to prove, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the protected disclosure.[8]  *Id.* (citing 5 U.S.C. § 1221(e)(1)-(2)).

<u>The appellant reasonably believed that her disclosure to OIG concerning the June 2007 safe incident evidenced a violation of an agency rule.</u>

¶8     A protected disclosure is a disclosure of information that an appellant reasonably believes evidences a violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.  *Linder v. Department of Justice*, 122 M.S.P.R. 14, ¶ 12 (2014).  To establish that an appellant made a protected disclosure, she need not prove that the matter disclosed actually established one of the categories of wrongdoing listed under 5 U.S.C. § 2302(b)(8)(A) or (B); rather, she must show that the matter disclosed was one that a reasonable person in her position would believe evidenced any of the specified categories of wrongdoing.  *Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 6 (2015).

¶9     We find that the appellant has proven this element based upon her disclosure of an agency rule violation.  *See* 5 U.S.C. § 2302(b)(8)(B)(i).  In November or December 2007, the appellant and a coworker met with OIG.  I-2 AF, Tab 18 at 38.  In the appellant's January 2008 letter to OIG, she thanked OIG for meeting with her and apologized for her delay in sending the information that

---

[7] A preponderance of the evidence is that degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue.  5 C.F.R. § 1201.4(q).

[8] Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established.  5 C.F.R. § 1209.4(e).

they had discussed.  I-2 AF, Tab 9 at 65.  Specifically, she asserted, inter alia, that, on Friday, June 7, 2007, after she noticed that a safe containing naturalization certificates was left open, she reported the incident to S.D.[9]  *Id.*  The appellant further asserted that on the following Monday, when she conducted an audit and counted the naturalization certificates, 300 certificates were missing and that the documentation for the missing certificates was not given to her until a week later.  *Id.*

¶10      The appellant asserts that her disclosure to OIG was protected, in part because she disclosed a violation of an agency law, rule, or regulation.  PFR File, Tab 5 at 2.  The Board has suggested that an agency "rule" includes established or authoritative standards for conduct or behavior.  *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 25 (2013).  The appellant testified that there were agency rules or regulations that required that naturalization certificates be kept secure and that an employee could be "terminated on the spot" for leaving the safe open.  HT, Vol. I at 35-36.  The appellant's belief that there was an agency rule regarding not leaving the safe open is supported by the agency's November 9, 2007 memorandum, issued to her work unit prior to her disclosures to OIG, that stated, "Employees who engage in security violations (e.g., safe left open . . . ) may be subject to disciplinary or adverse action."  I-2 AF, Tab 19 at 5.  That the safe incident was a violation of an agency rule is further supported by the Chief of Employment and Labor Relations (ELR), who testified that he believed the incident was a violation of agency policy.  HT, Vol. I at 155.  Accordingly, we find that a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the appellant could reasonably

---

[9] A representative from OIG declared in May 2012, that there was no electronic record of the appellant's complaint.  I-2 AF, Tab 19 at 17.  However, a former OIG employee testified that he spoke to the appellant and received her letter.  CCCD.

conclude that the safe incident evidenced a violation of an agency rule.[10]  *See Chavez*, [120 M.S.P.R. 285](), ¶ 25 (finding that the appellant's disclosure that an employee violated a rule by borrowing money from a patient was protected because a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the appellant could reasonably conclude that the conduct violated an agency rule).

<u>The appellant's protected disclosure was a contributing factor in her performance appraisal and termination.</u>

¶11     The most common way of proving that a disclosure was a contributing factor in a personnel action is the knowledge-timing test.[11]  *Shannon v. Department of Veterans Affairs*, [121 M.S.P.R. 221](), ¶ 23 (2014).  Under that test, an appellant can prove the contributing factor element through evidence that the official taking the personnel action knew of the whistleblowing disclosure and took the personnel action within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action.  *Id*.  An appellant also may show that a protected disclosure was a contributing factor by proving that the official taking the action had constructive knowledge of the protected disclosure, even if the official lacked actual knowledge.  *Nasuti v. Department of State*, [120 M.S.P.R. 588](), ¶ 7 (2014).  One way of establishing constructive knowledge is by demonstrating that an individual with actual knowledge of the disclosure influenced the official accused of taking the retaliatory action.  *Id*.

¶12     We find that S.D. at least had constructive knowledge of the appellant's disclosure.  She was the official who assigned the appellant the unacceptable performance rating and terminated her.  I-2 AF, Tab 18 at 46-47, Tab 19 at 6-16.

---

[10] The administrative judge found that the appellant did not reasonably believe that she was disclosing a danger to public health or safety.  ID at 10.  We see no reason to disturb this finding.

[11] The appellant's performance appraisal and subsequent termination constitute personnel actions as defined by [5 U.S.C. § 2302]()(a)(2).

There is testimony that S.D. knew about the appellant's disclosure to OIG by the end of November 2007, HT, Vol. II at 61-63, which S.D. disputes, *id.* at 161. However, the ELR Chief testified that he had knowledge of the appellant's disclosures to OIG.  HT, Vol. I at 154.  He advised S.D. about managing the appellant's performance and her decision to terminate the appellant.  I-2 AF, Tab 18 at 32-37, 43-44.  The supervisor of another unit also testified that she knew that the appellant made her disclosure to OIG around November and that S.D. often sought her advice about "issues" concerning the appellant.  HT, Vol. II at 111.  The agency does not dispute the testimony of either of these individuals. Thus, because those who advised S.D. concerning the personnel actions knew about the disclosure, we find that she had at least constructive knowledge of the disclosure.  *See generally Aquino v. Department of Homeland Security*, 121 M.S.P.R. 35, ¶¶ 21-24 (2014).

¶13    Regarding the timing of the personnel actions, the Board has held that personnel actions that were alleged to have begun within 1 to 2 years of a disclosure satisfy the "timing" component of the knowledge-timing test. *See Schnell v. Department of the Army*, 114 M.S.P.R. 83, ¶ 22 (2010).  Therefore, we find that the timing component also is met because agency officials became aware of the appellant's disclosure in late November/early December 2007, and the personnel actions took place shortly thereafter in December 2007, and February 2008, respectively.

The appeal is remanded to the administrative judge to assess whether the agency would have assigned the appellant an unacceptable performance appraisal and terminated her in the absence of her disclosure under the clear and convincing evidence standard.

¶14    Having found that the appellant established that her protected disclosure was a contributing factor in her unacceptable performance appraisal and termination, the burden now shifts to the agency to establish by clear and convincing evidence that it would have taken the same personnel actions in the absence of the protected disclosure.  5 U.S.C. § 1221(e)(2); *Aquino*, 121 M.S.P.R.

35, ¶ 25.  Because the administrative judge concluded that the appellant failed to prove that she made a protected disclosure, she made no findings as to whether the agency met its burden in this regard by clear and convincing evidence.  ID at 10.   Based upon the nature and timing of the agency's actions and the appellant's disclosure, and the fact that the administrative judge heard the witnesses' testimony, we believe the administrative judge is in the best position to make the necessary factual and credibility determinations in the first instance to decide if the agency has established by clear and convincing evidence that it would have taken the same actions in the absence of the appellant's protected disclosure.  *See Mithen v. Department of Veterans Affairs*, 119 M.S.P.R. 215, ¶ 23 (2013) (remanding the question on the clear and convincing evidence standard to the administrative judge for, among other things, credibility determinations).  We accordingly remand the appeal to the administrative judge for an assessment of whether the agency met its burden by clear and convincing evidence under the standards articulated in *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012), and *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).  *See Mithen*, 119 M.S.P.R. 215, ¶ 24.  The administrative judge held a hearing in this matter and correctly informed the parties of their respective burdens of proof beforehand.  We deem the record complete.  If, however, the administrative judge deems it necessary for proper adjudication of this appeal to allow additional discovery or to conduct a supplemental hearing, she retains the discretion to do so.

## ORDER

¶15     For the reasons discussed above, we remand MSPB Docket No. DC-1221-12-0452-W-2 to the regional office for further adjudication in accordance with this Order.  This is the final decision of the Merit Systems Protection Board regarding the constructive discharge appeal in MSPB Docket No. DC-0752-12-0648-I-2.  5 C.F.R. § 1201.113(c).

## NOTICE TO THE APPELLANT
## REGARDING YOUR FURTHER REVIEW RIGHTS
## IN MSPB DOCKET NO. DC-0752-12-0648-I-2

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.  You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed.  *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right.  It is found in title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm.  Additional information is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:                    _____
                                  William D. Spencer
                                  Clerk of the Board

Washington, D.C.

CERTIFICATE OF SERVICE

I certify that this Order was sent today to each of the following:


| | |
|---|---|
| Electronic Mail | Thomas F. Hennessy<br>Virginia Family & Employment Law Center<br>4015 Chain Bridge Road, Suite 6<br>Fairfax, VA 22301 |
| U.S. Mail | Amanda Mojdeh Raiszadeh<br>5973 Havener House Way<br>Centreville, VA 20120 |
| Electronic Mail | Laura J. Carroll<br>Department of Homeland Security<br>Associate Counsel<br>Office of the Principal Legal Advisor<br>70 Kimball Avenue, Room 103<br>South Burlington, VT 05403<br><br>Washington Regional Office<br>U.S. Merit Systems Protection Board<br>1901 South Bell Street<br>Suite 950<br>Arlington, Virginia 22202-4802 |


_____
December 9, 2015
(Date)

_____
Dinh Chung
Case Management Specialist

### UNITED STATES OF AMERICA
### MERIT SYSTEMS PROTECTION BOARD
### ATLANTA REGIONAL OFFICE

| | |
|---|---|
| AMANDA MOJDEH RAISZADEH,<br>Appellant,<br><br>v.<br><br>DEPARTMENT OF HOMELAND<br>SECURITY,<br>Agency. | DOCKET NUMBER<br>DC-1221-12-0452-B-1<br><br><br>DATE: November 23, 2016 |

Thomas F. Hennessy, Fairfax, Virginia, for the appellant.

Laura J. Carroll, South Burlington, Vermont, for the agency.

### BEFORE
Sherry Linville
Administrative Judge

## INITIAL DECISION

By Order dated December 9, 2015, the Board remanded this appeal to address whether the agency would have taken the same actions against the appellant absent her protected disclosure. Remand File (RF), Tab 1. For the reasons explained below, the appellant's request for corrective action is DENIED.

## ANALYSIS AND FINDINGS

Background

Effective March 18, 2007, the agency appointed the appellant to the position of Citizen and Immigration Services (CIS) Assistant, GS-1802-07, which was later converted to the position of Supervisory CIS Assistant, GS-1802-09, on April 1, 2007. Appeal File, Docket No. DC-0752-12-0648-I-2, (AF-I-2) Tab 18

at 12-13.   The appellant had no prior experience working for the federal government and was required to complete a probationary period of one year.   *Id.* In her new position, the appellant supervised approximately seven to eight clerical/support employees of the CIS Washington Field Office in Fairfax, Virginia.   *Id.* at 23-31, 45.   The appellant's immediate supervisor was Susan Dibbins who was the Field Office Director, GS-15.   Hearing Transcript (HT), Vol. 2 at 134-35.

In late 2007, the appellant and a coworker, Cheri Bailey, met with the Special Agent in Charge, Joseph Gaudiano, and the Assistant Special Agent in Charge, Timothy Herlihy, with the agency's Office of Inspector General (OIG). AF-1-2, Tab 30, Exhibit I; Tab 42, Hearing Compact Disc (HCD).   During this meeting, the appellant complained of several incidents involving her subordinate employees, and that on June 7, 2007, a safe was left open containing naturalization certificates.[1]   *Id.*   On December 17, 2007, Agent Herlihy sent the appellant an email, in which he told her it was "nice meeting with" her and that he was returning her files.   *Id.*, Exhibit H.   In that email, Agent Herlihy also thanked the appellant "for taking time to pull [her] thoughts together," and that he was looking "forward to hearing" from the appellant.   *Id.* On January 2, 2008, the appellant sent Agent Herlihy a letter outlining her complaints.   *Id.*, Exhibit I.

On December 28, 2007, Ms. Dibbins rated the appellant as unacceptable on three of her Core Competencies (communication, teamwork and cooperation, and leadership) resulting in an overall performance rating of unacceptable.   AF-I-2, Tab 19 at 6-16.   The appellant electronically signed the performance evaluation on January 11, 2008.   *Id.*   On February 11, 2008, Ms. Dibbins sent an email to

---

[1] Although in her closing argument the appellant references the safe containing naturalization certificates being left open on two occasions and in her testimony she states that the safe was left open multiple times, only the June 7, 2007 incident was brought to OSC and is properly before the Board.   AF-2-I, Tab 26 (Order and Summary of Prehearing Conference); *see also,* RF, Tab 1 (Board Remand Order).

Mitch Berkenkemper, Chief of the Labor and Employees Relations, stating that she wanted to terminate the appellant because "[s]ome events happened last week that were the final straw and she cannot continue in a supervisory role here any longer." AF-I-2, Tab 30, Exhibit D.  On February 19, 2008, Ms. Dibbins issued the appellant her termination notice, which cited deficiencies in her performance during her probationary period.  AF-1-2, Tab 18 at 46-47.  While the termination letter effectuated the appellant's termination on February 19th, the agency permitted the appellant to submit her resignation on February 29, 2008, retroactive to the termination date. *Id*. at 50.

Clear and Convincing Evidence

For an appellant who establishes Board jurisdiction over her IRA appeal to be entitled to corrective action over her claims, she must establish by a preponderance of the evidence the following four elements: (1) the management official has the authority to take, recommend, or approve any personnel action; (2) the aggrieved employee made a disclosure protected under 5 U.S.C. § 2302(b)(8)(A); (3) the management official used her authority to take, or refuse to take, a personnel action against the aggrieved employee; and (4) the protected disclosure was a contributing factor in the agency's personnel action. *See Chambers v. Department of Interior*, 602 F.3d 1370, 1376 (Fed. Cir. 2010); *Lachance v. White*, 174 F.3d 1378, 1380 (Fed. Cir. 1999), *cert. denied*, 528 U.S. 1153 (2000).  If the appellant meets that burden, the Board must order corrective action unless the agency establishes by clear and convincing evidence that it would have taken the same personnel action in the absence of the disclosure. *Whitmore v. Department of Labor,* 680 F.3d 1353, 1368 (Fed. Cir. 2012).

It is undisputed that the appellant was hired by the agency to supervise the clerical/support staff for the CIS Washington D.C. Field Office, some of which had been with the agency 20 to 30 years.  By all accounts, there were continuing problems between the appellant and her staff.  In August 2007, two of the appellant's subordinate employees complained that the appellant subjected them

to a hostile work environment. AF-I-2, Tab 18 at 16, 18-21. Specifically, the employees complained that while the appellant was away at training, she called the unit excessively, screamed at the employees, threatened unwarranted disciplinary action, and treated them with disrespect. *Id.* These problems continued, necessitating management and the American Federation of Government Employees (AFGE) to agree to conduct a Focus Group with the employees in October 2007. *Id.* at 23-31; Tab 31, Exhibit L.

After the Focus Group report was issued on October 11, 2007, management officials discussed techniques to correct the appellant's behavior while continuing to support her as a supervisor. *Id.* at 43-45. On November 9, 2007, Gregory Christian, District Director, issued the clerical unit employees a memo to serve "as a reminder of policies and behaviors that are critical to the smooth operation of the Clerical Unit and the Washington Field Office" and the memo also stated "[i]t is imperative that all employees abide by these practices." AF-1-2, Tab 19 at 4-5. Among other things, this memo reminded the clerical employees that they were to "obey the directive of their supervisors," not perform work for another unit without permission, "behave professionally in the office and to refrain from using profanity," and to "show proper respect for their supervisor's position, regardless of their opinion of the person in the position." *Id.*

On November 28, 2007, Mr. Berkenkemper sent an email to several management officials, including the appellant and her supervisor, Susan Dibbins, suggesting a two prong approach to improve the relations in the appellant's clerical unit. AF-I-2, Tab 18 at 32-35. The first approach was to deal with the appellant's shortcomings by conducting a mediation with the appellant and her staff, and the second involved potential disciplinary action if the appellant's employees violated the procedures provided in the November 9th memorandum. *Id.* That same day, Ms. Dibbins sent Mr. Berkenkemper an email in which she explained that she was "getting close to a decision to terminate [the appellant]" because she did not have "the ability or temperament to be a supervisor." *Id.*

However, later that day, Ms. Dibbins confirmed that she would "hold-off on any final decision regarding [the appellant] while we get this next phase going," and that while she still had "some serious reservations about [the appellant's] ability to lead," she wanted "to see how [the appellant] handle[d] herself and the unit during this phase of the process." *Id*. Ms. Dibbins also noted that she wanted to start the mediation process "soon while [the appellant] is within her probationary period," but "time is running short." *Id*. Because of various scheduling issues, the mediation was not scheduled until February 19 and 21, 2008. AF-I-2, Tab 31, Exhibit L.

On December 28, 2007, Ms. Dibbins rated the appellant as unacceptable in the core competencies of communication, teamwork and cooperation, and leadership. AF-1-2, Tab 19 at 6-16. On February 11, 2008, Ms. Dibbins wrote a memo for record, outlining a report she received from an employee, Cheri Bailey. AF-1-2, Tab 31, Exhibit D. The memo indicated that the appellant had been telling Ms. Bailey that Katinska Tapia, Ms. Bailey's supervisor, had been "talking badly about" Ms. Bailey and that "she is really after you." *Id*. The memo also indicated that the appellant had asked about the content of a closed-door meeting between Ms. Bailey and Ms. Dibbins, and that she had been telling everyone that she was the "star witness" in the Michael Hadeed investigation.[2] *Id*. Ms. Dibbins noted that while the Hadeed investigation was "confidential," the appellant had told at least four other employees. *Id*. The memo further indicated that Ms. Dibbins spoke to another employee, Mary Flores, for confirmation of the report, and that Ms. Flores stated that the appellant was "very immature, cannot be trusted, and [tries] to stir-up problems because she constantly needs to be the center of attention." *Id*. Ms. Dibbins concluded the

---

[2] The OIG had an ongoing criminal investigation of Michael Hadeed, a local attorney. The appellant worked as a paralegal for Mr. Hadeed prior to her appointment to the federal service.

memo by stating "based on this information, combined with other incidents with Amanda in the past, I am seeking to terminate her while she is on probation." *Id.* That same day, Ms. Dibbins emailed Mr. Berdenkemper stating that she "need[s] and want[s] to terminate Amanda Raiszadeh," and that "[s]ome events happened last week that were the final straw and she cannot continue in a supervisory role here any longer." *Id.*, Exhibit D. On February 19, 2008, Ms. Dibbins notified the appellant that she "will be removed during probation from [her] positon of Supervisory CIS Assistant" based on her unsatisfactory performance rating. AF-1-2, Tab 19 at 46-47.

At the hearing, Ms. Dibbins testified that the appellant "was not particularly competent as a supervisor," and that she had "difficulty making independent decisions," tended "to be overly dramatic about things that were going on in the office," and was inclined "to personalize things that really were more about...operational issues." HT, Vol. 2 at 141. She explained that sometimes the appellant demonstrated good judgment and sometimes she did not, and she required a lot of "hand-holding" with "how to deal with employees individually; how to deal with...dynamics within the group," and "operational issues." *Id.* at 142. Ms. Dibbins stated that she spoke to the appellant several times a week on how to improve the office functions, during which she would "point out" the appellant's "problem areas." *Id.* at 148. While Ms. Dibbins acknowledged that the appellant had a "difficult staff," she testified that she "couldn't always be the problem solver" for the appellant, and because the appellant was "hired to be a member of management," she was "supposed to be able to make independent decisions." *Id.* at 149. Ms. Dibbins testified that she was not aware that the appellant had gone to the OIG to report the safe being left open until 2011 or 2012, during the processing of the appellant's EEO complaint. *Id.* at 161. She testified that while she was aware that the appellant had met with the OIG in 2007, it was her belief that the meetings involved an investigation of Michael Hadeed, the appellant's former employer. *Id.* Regarding the

unacceptable performance ratings, Ms. Dibbins testified that she gave these ratings to the appellant based on her performance, not because she had met with the OIG. *Id.* at 185.

Mr. Christian testified that he received reports "from [the appellant's] direct staff…that she was accusative and harsh with her employees and there was often a back and forth between her and her employees, and it was a difficult environment to work in." HT, Vol. 2 at 94. He stated that the appellant "was a contributing factor" to the drama in her office. *Id.* at 95. While the decision to terminate the appellant was Ms. Dibbins', Mr. Christian testified that he agreed with the decision. *Id.* at 100.

Mr. Berkenkemper testified that the appellant had "a difficult working environment in the sense that what you had was a group of employees in an office who had worked together for many years, some of them as many as 30 years together," and they were "familiar with each other" and "a close-knit group." HT, Vol. 2 at 152. He also testified that the planned mediation session could not be scheduled in November/December 2007 because of the holiday schedule, and once Ms. Dibbins decided to terminate the appellant, it was unnecessary to have the mediation scheduled for February 19 and 21. *Id.* at 167.

The appellant testified that she was hired to supervise the clerical unit, which had between seven and nine employees. HT, Vol. 1 at 14-15. At the beginning, she was told that she was "inheriting a very hostile unit" of employees. *Id.* The appellant testified that the behaviors outlined in the November 9 memo were problems that she had brought to management's attention, and when this memo was issued, the appellant believed that she had the support of Ms. Dibbins and Mr. Christian. *Id.* at 23. According to the appellant, Ms. Dibbins would always listen to her and allow her to talk at supervisor meetings, but this "drastically" changed after November 27, 2007. *Id.* at 50.

The appellant stated that she initially called James Izzard with the OIG, and after speaking with her, he set up a meeting with his supervisor, Tim Herlihy.

*Id.* at 86-89. The appellant testified that she is sure that the meeting occurred on November 21, 2007, the day before Thanksgiving, because she purchased Super Chicken for her employees on that day with her NASA credit card. *Id.* The appellant further testified that she believes she met with the OIG on November 21 because she and Ms. Bailey were provided 2 hours of administrative leave on that date, and that was the only date they could go together. *Id.* at 92-95. She testified that they met with the agents until 6:00 or 6:30 that evening. *Id.* at 99. After the meeting, the appellant stated that she spent her Thanksgiving holiday putting together all her thoughts on a written document and faxed it to Mr. Herlihy on November 26 or 27. *Id.* at 111. The appellant further testified that after she faxed this document to Mr. Herlihy, she and Ms. Dibbins had an "extreme confrontation" on November 26 or 27, where Ms. Dibbins "started interrogating" her about what she told the OIG. *Id.* at 112-15. The appellant explained that Ms. Dibbins was very upset and yelling. *Id.* The appellant testified that she called Mr. Herlihy shortly thereafter, during which they had a lengthy conversation about the confrontation with Ms. Dibbins and her belief that she was going to be fired for coming to his office. *Id.* She confirmed that Mr. Herlihy emailed her on December 17, 2007, and she said that he verbally informed her that she needed to put her complaints in better written form. *Id.* at 117; Tab 31, Exhibit H. She also confirmed that she sent him the list of complaints on January 2, 2008, after receiving assistance with the writing from Ms. Bailey. *Id.*; Tab 31, Exhibit I.

Prior to the poor performance evaluation in late December 2007, the appellant testified that she had not received any formal counseling from her supervisors and no indication that she might be subject to termination. HT. Vol. 1 at 127-31. She stated that throughout her employment she had been given additional responsibilities from Ms. Dibbins. Further, she disputed several of the incidents as provided in Ms. Dibbins' November 28, 2007 email. *Id.* at 133-41. The appellant also testified that she never made the comments to Ms. Bailey and

Ms. Flores as indicated in Ms. Dibbins' February 11, 2008 memorandum. *Id*. at 188.

Agent Herlihy testified that he and Agent Gaudiano met with the appellant and Ms. Bailey because Agent Izzard and Agent Karen Jordan were unable to meet with them.    AF-I-2, Tab 42.    He explained that Ms. Bailey had been providing information concerning several pending criminal investigations, and that the appellant was being interviewed to determine whether she had information pertaining to the Michael Hadeed investigation. *Id*. As it turns out, the appellant had no valuable information about the Hadeed investigation and wanted to discuss various personnel problems she was having with her employees and managers. *Id*. While Agent Herlihy recalled the appellant reporting the safe incident, he stated that they were well aware of safes being left open at CIS and that was not noteworthy.    *Id*.    He also confirmed that he sent the appellant the email on December 17, 2007.    *Id*.

Ms. Bailey testified that she remembered going with the appellant "a couple of days before the Thanksgiving holiday," and that she believes it was November 21.    HT, Vol. 1 at 50-51.    She testified that she would have left the office around 2:30 p.m., and they met with the agents until after dark.    *Id*. at 52. Ms. Bailey confirmed that the appellant spent her Thanksgiving holiday writing a document for the OIG. *Id*. at 56. Ms. Bailey further testified that not long after this visit, Ms. Dibbins asked her about the appellant's visit to the OIG and that Ms. Dibbins was trying to figure out who went with her to the OIG and details about the visit. *Id*. at 61-64. According to Ms. Bailey, Ms. Dibbins told her that the appellant had informed her of the OIG visit.    Ms. Bailey also denied making the report to Ms. Dibbins as provided in the February 11, 2008 memorandum and explained that Ms. Dibbins told her that the appellant had been bragging about being a "star witness" in the Hadeed investigation. *Id*. at 72-74, 76. After the appellant's termination, Ms. Bailey testified that Ms. Dibbins informed her that

the appellant had been terminated for her failure to disclose that she had worked for Michael Hadeed and told her not to talk to the appellant. *Id.* at 78.

Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established. 5 C.F.R. § 1209.4(e). In determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of whistleblowing, the Board will consider the following factors: the strength of the agency's evidence in support of its action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration,* 185 F.3d 1318, 1323 (Fed. Cir. 1999). "Evidence only clearly and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly detracts from that conclusion." *Whitmore,* 680 F.3d at 1368.

*The agency's evidence in support of its action is strong.*

The agency had strong evidence to support the termination of a probationary employee. There is no denying the evidence that the appellant was having serious difficulty managing her staff. As reported by the AFGE Focus Group, "the 'elephant in the room' during the meeting was the fact that the employees feel strongly that the main problem has been poor supervision, divisive policies and a hostile work environment created by their supervisor, Ms. Raiszadeh." AF-I-2, Tab 18 at 23-31. Some of the criticisms included:

- The employees "feel that they are constantly nagged and provoked by" the appellant;
- The appellant had "control issues" that requires her to "constantly reinforce and remind the workers" that she was "in charge" in a way that was "abrasive, overbearing and rude;"

- She "micro-manages" the unit;
- She "constantly threatens" the employees with disciplinary action;
- The appellant would call the employees while they were on leave and rudely spoke to their family;
- She "berates employees for going outside of their chain of command to address issues;"
- The appellant would discuss the employees' "deficiencies and failings in front of other employees, and in front of the public (applicants and their representatives.);"
- The employees described the appellant as "paranoid, immature, and 'gung ho,'" and she "threatens, harasses and intimidates her subordinates;"
- They complained that the appellant would talk about an employee's performance with other employees, causing conflict; and
- They accused her of going "on the rampage," demanding that they tell her who is talking about her.

*Id.* In addition to the above specific criticisms, the employees also complained of the appellant's poor communication skills and of her improper handling of leave requests, including demanding the "reasons for requesting leave" and denying "the leave if she does not like the reason given." *Id.* The report further indicated that the "[m]orale in the clerical section is at an all-time low," and that all the employees "agree [that] this is the worst situation they have worked in, and most want to leave or transfer to other supervisors." *Id.* The employees also noted some recent improvement in the appellant's management style, but they all agreed that the appellant's "supervision [was] the worst in their careers," and that "they have been deeply offended and hurt by [the appellant's] insensitive and heavy-handed treatment of them, and all said they wished to be transferred to work under other supervisors." *Id.*

The appellant acknowledged that she had a difficult set of employees to supervise, but seems to excuse her managerial failures by blaming her staff, accusing of them various infractions such as "excessive use of phone, government phone, either tardiness on a daily basis, lying on their time sheets, not producing the work that was given to them in time, profanity, tearing up pay slips, suspicious activities, like having a newspaper folded and pass[ed] around each other," and "[p]ersonal boxes" delivered to their cubicles. HT, Vol. 1 at 17. Even assuming this is true, however, it fails to address the appellant's obvious shortcomings with her performance. For example, all of the incidents outlined in the November 28, 2007 email involved the appellant's poor interaction with fellow employees. While the appellant argues that the employees were also at fault, there is no dispute that these events were reported to Ms. Dibbins and were not fabricated by her to find a reason to terminate the appellant during her probationary period. Likewise, Ms. Dibbins' rating the appellant as unacceptable on three of her Core Competencies (communication, teamwork and cooperation, and leadership) was in fact an accurate assessment. In the communication element, Ms. Dibbins noted that the appellant was "reactionary rather than composed in situations, which has caused disruptions in her unit," and that the appellant needed additional training in written communication. AF-I-2, Tab 19 at 15. As reported by the appellant's subordinates, the agency's evidence supports the conclusion that the appellant had been reactionary with her staff, creating conflict. Ms. Dibbins assessment of the appellant's written work was also accurate. The email the appellant wrote on November 27, 2007, is nearly incomprehensible. *See* AF-I-2, Tab 18 at 33. While the appellant testified that she was upset when writing that email because the employee had cursed at her, this does not take away from Ms. Dibbins accurate assessment.[3]   Moreover, Ms.

---

[3] The appellant testified that she took days to write the January 2, 2008 letter to Agent Herlihy. However, this letter was also very poorly written.

Bailey testified that the appellant was aware that Ms. Dibbins "always criticized" her writing skills. HT, Vol. 2 at 67.

Under teamwork and cooperation, Ms. Dibbins noted that the appellant's "unit experiences a significant disintegration of cohesion," which necessitated management and the union to form a focus group. *See* AF-I-2, Tab 19 at 15. While she acknowledged some of the employees were at fault, she noted that the appellant's reaction "inflamed the already volatile situation." *Id.* Under leadership, Ms. Dibbins noted that the appellant's unit was "unable to work cohesively." While the appellant seems to shift the blame for the dysfunction onto her employees, she was hired to supervise them, and to the extent that the unit was dysfunctional, it was her responsibility to correct the situation. Moreover, it appears that she not only failed to correct improper behavior, but contributed to the dysfunctionality of the unit. The appellant correctly pointed out that the Focus Group was created to solve the problems between her and staff; however, that does not mean that it absolved the appellant from her responsibilities as a supervisor. And, there was no evidence that the issues the appellant had with supervision were resolved by her own actions prior to her termination. After reviewing the entirety of the record concerning the appellant's termination, I find that the evidence in support of the appellant's termination during her probationary period is very strong as it is apparent she was unable to perform several significant job functions.

*The motive to retaliate on the part of the agency's officials was weak.*

The appellant argues that Ms. Dibbins' retaliatory motive is evident from the sudden change in her attitude towards the appellant after their meeting on November 26 or 27, 2007, when she told Ms. Dibbins about the meeting with the OIG and the disclosure. The appellant asserts that Ms. Bailey's testimony supports this finding. On the other hand, Ms. Dibbins denies this meeting took place, and while she admits that she was aware that the appellant had met with the OIG, she thought it concerned the Hadeed investigation, not the June 7, 2007

safe incident.   Ms. Dibbins testified that she was unaware of the appellant's disclosure about the safe incident until the processing of the appellant's EEO complaint in 2011 or 2012.   To resolve credibility issues, an administrative judge must identify the factual questions in dispute, summarize the evidence on each disputed question, state which version she believes, and explain in detail why she found the chosen version more credible, considering such factors as:   (1) the witness's opportunity and capacity to observe the event or act in question; (2) the witness's character;  (3) any prior inconsistent statement by the witness;  (4) a witness's bias, or lack of bias;  (5) the contradiction of the witness's version of events by other evidence or its consistency with other evidence; (6) the inherent improbability of the witness's version of events; and (7) the witness's demeanor. *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987).

In this case, I find Ms. Dibbins' testimony more credible than the appellant's and Ms. Bailey's respective testimonies for the following reasons.  At the hearing, I found Ms. Dibbins' to be a direct, straightforward witness, and I discerned no ambiguity or subterfuge in her testimony.   With regard to the appellant's testimony, at each stage of the prior extensive EEO proceeding, the appellant claimed under oath that she had met with the OIG in December of 2007, not November.  Again, before OSC, the appellant claimed that she met with the OIG in December 2007.  In fact, she did not change her position until after the agency produced Ms. Dibbins' email dated November 28, 2007, stating that she was considering termination.  At the hearing, the appellant claimed that she provided "approximate timing" of the meeting in prior testimony because it was not germane to that issue and that her memory was refreshed by Ms. Bailey's deposition.  I do not find this persuasive because when an individual provides sworn testimony in multiple legal proceedings, it should be consistent to be believable.  And, I do not find it justifiable to provide inconsistent testimony merely because it involved a different type of legal claim.  Further, if the appellant had in fact met with Agent Herlihy the day before Thanksgiving as she

now claims, I believe she would have specifically remembered that date the first time she provided a sworn statement in 2008 when her memory of the event was fresher.

Similarly, the appellant's and Ms. Bailey's testimony that they received two hours of administrative leave to meet with the OIG on November 21, 2007, and they met with the agents until late in the evening is not believable. I credit Agent Herlihy's testimony that at that time the agency routinely awarded two hours of administrative leave to all employees the day before Thanksgiving and his testimony that it was highly unlikely that he met with them into the evening the day before Thanksgiving. Additionally, Agent Herlihy testified that Agent Gaudiano had an annual party the night before Thanksgiving, and it was unlikely that he would have been able to stay. The appellant also testified that she faxed Mr. Herlihy an initial version of her written statement the Monday or Tuesday after the holiday; Agent Herlihy asked her to rewrite it; and she had a long conversation with him about Ms. Dibbins' reaction to their meeting. These statements, however, are contradicted by Agent Herlihy who testified that he did not receive a fax from the appellant and he "would not" ask her to rewrite her statement as it "would not be appropriate" to do so. And, while Agent Herlihy confirmed that he sent the appellant an email on December 17, 2007, he testified that it was his normal practice to send it within a "few days of the meeting" and he always returned documents in a "quick fashion." Agent Herlihy did not recall receiving any phone calls from the appellant or that the appellant was concerned about Ms. Dibbins being unhappy with her. Agent Herlihy has now retired and his testimony was forthright without dissimulation. I simply did not discern any sort of bias on his part, but merely an explanation of the normal procedures followed at that time. *See Holton v. Department of the Navy,* 2016 MSPB 39 (November 2, 2016)(citing with approval the use of Federal Rule of Evidence 4064, which permits the use of "a person's habit or an organization's routine

practice" to prove compliance with that habit or practice "on a particular occasion").

In contrast, at the hearing of this matter, I was unimpressed with the appellant's demeanor as she appeared evasive, chaotic and at times, bordering on incoherent. Not only did she contradict her testimony from the EEO proceeding about the timing of the meeting with OIG, her testimony was also inconsistent about when she told Ms. Dibbins of that meeting. In the EEO proceeding, she testified that she told Ms. Dibbins in January 2008 of the OIG meeting, not November 26 or 27, 2007. *See* HT, Vol. 2, at 16. Further, based on the sheer number of complaints about the appellant from her subordinates, it defies common sense to believe that the appellant was unaware that her performance was problematic prior to her poor performance review in January 2008. Indeed, in her EEO proceeding, the appellant testified that "[t]hrough all my employment with CIS, I was constantly told by Ms. Dibbins that I did not have the managerial experience, I do not know how to manage the staff or my work," and that she was "called into [Ms. Dibbins'] office, listening to her criticism." *Id.* at 19. In the proceeding before me, it appeared that the appellant was attempting to mix-up the facts to such a degree to make a plausible winning argument, and I came away with the impression that she would change her testimony as necessary to further her position.

With regard to Ms. Bailey, her testimony that she set-up the meeting with the OIG about the safe being left open is contradicted by Agent Herlihy who testified the meeting was organized for purposes of the Hadeed investigation. Ms. Bailey was also impeached for testifying inconsistently with her prior deposition testimony with regard to the February 11, 2008 memo written by Ms. Dibbins. *See* HT, Vol. 2 at 79. At the hearing, I found Ms. Bailey to be less than credible and she appeared to have a bias to help the appellant's case. As I found above, it is not believable that the appellant and Ms. Bailey met with the OIG

until late in the evening on Thanksgiving eve.[4] Thus, Ms. Bailey's testimony to that effect and with regard to the subsequent conversations with Ms. Dibbins seemed contrived to further the appellant's position. Also, I find it inherently improbable that Ms. Dibbins would tell Ms. Bailey that the appellant was fired based on her failure to disclose her employment with Michael Hadeed when Ms. Bailey had served as an informant with the OIG who was conducting the Hadeed investigation. For these reasons, I do not credit Ms. Bailey's testimony. Thus, I find that Ms. Dibbins was unaware of the disclosure concerning the June 7, 2007 safe incident until after termination decision was made.[5]

Conclusion

When viewing the totality of the evidence, I find that the agency proved by clear and convincing evidence that the appellant was not performing at an acceptable level during her probationary period and that it would have taken the same termination action even in the absence of her whistleblowing activity. The

---

[4] The appellant also argues that Mary Flores' testimony substantiates that the OIG meeting occurred in November 2007. At the hearing, she testified that "it was around the holidays, so it had to be November." HT, Vol. 2 at 111. However, it is undisputed that Ms. Flores did not personally attend the meeting with OIG, and her testimony is based on speculation that it was in November because of the holidays. I did not come away with a firm belief that Ms. Flores actually remembered the time frame in question.

[5] The agency did not present any evidence showing that it took similar actions against employees who were not whistleblowers, but who were otherwise similarly situated to the appellant. In *Whitmore*, the Board's reviewing court determined that "*Carr* does not impose an affirmative burden on the agency to produce evidence with respect to each and every one of the three *Carr* factors to weigh them each individually in the agency's favor." *Whitmore*, 680 F.3d at 1374. Rather, "the absence of any evidence relating to *Carr* factor three can effectively remove that factor from the analysis." *Id.*; *see Runstrom v. Department of Veterans Affairs*, 123 M.S.P.R. 169, ¶ 18 (2016) (finding that, due to lack of evidence that there were any employees similarly situated to the appellant, the third *Carr* factor was not significant for the analysis of that case). This is the situation presented in the instant matter. Accordingly, I find that the third *Carr* factor is insignificant due to the lack of evidence regarding similarly situated employees. *See Campbell v. Department of the Army*, 2016 MSPB 39, ¶ 20 (November 2, 2016).

evidence of record demonstrates that the appellant was having substantial problems supervising and communicating with the employees she was hired to manage. The written evidence submitted by the agency also demonstrates that Ms. Dibbins was concerned about determining whether the appellant was able perform her duties prior to her probationary period concluding and that the decision to terminate the appellant was made about a month before the end of the her probation. *See* AF-I-2, Tab 18 at 11, 46. While the appellant asserts that the agency failed to provide the mediation to solve her problems with her staff, nothing requires the agency to take this step. Also, because Ms. Dibbins was unaware of the safe opening disclosure until well-after the termination decision, I find that the strength of any motive to retaliate was weak. Indeed, this seems to be a typical probationary termination based on the appellant's inability to perform basic job functions and not retaliation for engaging in protected activity.

## DECISION

The appellant's request for corrective action is DENIED.

FOR THE BOARD:

Sherry Linville
Administrative Judge

## NOTICE TO APPELLANT

This initial decision will become final on **December 28, 2016**, unless a petition for review is filed by that date. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision. If you are represented, the 30-day period begins to run upon either your receipt of the initial decision or its receipt by your representative, whichever comes first. You must establish the

date on which you or your representative received it. The date on which the initial decision becomes final also controls when you can file a petition for review with the Court of Appeals. The paragraphs that follow tell you how and when to file with the Board or the federal court. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review.

If the other party has already filed a timely petition for review, you may file a cross petition for review. Your petition or cross petition for review must state your objections to the initial decision, supported by references to applicable laws, regulations, and the record. You must file it with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.
Washington, DC 20419

A petition or cross petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing. A petition submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's e-Appeal website (https://e-appeal.mspb.gov).

### Criteria for Granting a Petition or Cross Petition for Review

Pursuant to 5 C.F.R. § 1201.115, the Board normally will consider only issues raised in a timely filed petition or cross petition for review. Situations in which the Board may grant a petition or cross petition for review include, but are not limited to, a showing that:

(a) The initial decision contains erroneous findings of material fact. (1) Any alleged factual error must be material, meaning of sufficient weight to

warrant an outcome different from that of the initial decision. (2) A petitioner who alleges that the judge made erroneous findings of material fact must explain why the challenged factual determination is incorrect and identify specific evidence in the record that demonstrates the error. In reviewing a claim of an erroneous finding of fact, the Board will give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing.

(b) The initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case. The petitioner must explain how the error affected the outcome of the case.

(c) The judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case.

(d) New and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. To constitute new evidence, the information contained in the documents, not just the documents themselves, must have been unavailable despite due diligence when the record closed.

As stated in 5 C.F.R. § 1201.114(h), a petition for review, a cross petition for review, or a response to a petition for review, whether computer generated, typed, or handwritten, is limited to 30 pages or 7500 words, whichever is less. A reply to a response to a petition for review is limited to 15 pages or 3750 words, whichever is less. Computer generated and typed pleadings must use no less than 12 point typeface and 1-inch margins and must be double spaced and only use one side of a page. The length limitation is exclusive of any table of contents, table of authorities, attachments, and certificate of service. A request for leave to file a pleading that exceeds the limitations prescribed in this paragraph must be received by the Clerk of the Board at least 3 days before the filing deadline. Such requests must give the reasons for a waiver as well as the desired length of the

pleading and are granted only in exceptional circumstances. The page and word limits set forth above are maximum limits. Parties are not expected or required to submit pleadings of the maximum length. Typically, a well-written petition for review is between 5 and 10 pages long.

If you file a petition or cross petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record. A petition for review must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you or your representative more than 5 days after the date of issuance, 30 days after the date you or your representative actually received the initial decision, whichever was first. If you claim that you and your representative both received this decision more than 5 days after its issuance, you have the burden to prove to the Board the earlier date of receipt. You must also show that any delay in receiving the initial decision was not due to the deliberate evasion of receipt. You may meet your burden by filing evidence and argument, sworn or under penalty of perjury (*see* 5 C.F.R. Part 1201, Appendix 4) to support your claim. The date of filing by mail is determined by the postmark date. The date of filing by fax or by electronic filing is the date of submission. The date of filing by personal delivery is the date on which the Board receives the document. The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service. Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party. *See* 5 C.F.R. § 1201.4(j). If the petition is filed electronically, the online process itself will serve the petition on other e-filers. *See* 5 C.F.R. § 1201.14(j)(1).

A cross petition for review must be filed within 25 days after the date of service of the petition for review.

## NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date this initial decision becomes final. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of this decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this decision only after it becomes final by filing in the United States Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within 60 days after the date on which this decision becomes final. *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. You may choose to request review of the Board's decision in the United States Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both. Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information about the United States Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for your court appeal, that is, representation at no cost to you, the Federal Circuit Bar Association may be able to assist you in finding an attorney. To find out more, please click on this link or paste it into the address bar on your browser:

https://fedcirbar.org/Pro-Bono-Scholarships/Government-Employees-Pro-Bono/Overview-FAQ

The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

## CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

#### Appellant

U.S. Mail

Amanda Mojdeh Raiszadeh
5973 Havener House Way
Centreville, VA 20120

#### Appellant Representative

Electronic Mail

Thomas F. Hennessy
Virginia Family & Employment Law Center
4015 Chain Bridge Road, Suite G
Fairfax, VA 22030

#### Agency Representative

Electronic Mail

Laura J. Carroll
Department of Homeland Security
USCIS; U.S. Department of Homeland Security
70 Kimball Avenue, Room 103
South Burlington, VT 05403

_____
November 23, 2016
(Date)

JoAnn Atkinson
Paralegal Specialist